**W. Dianne MAYO, Appellant,**

v.

**FEMALE UNION BAND SOCIETY CEMETERY TRUST, et al.,**
**Appellees.**

No. 11–CV–1492.

District of Columbia Court of Appeals.

Submitted Nov. 30, 2012.

Decided Jan. 16, 2013.[*]

W. Dianne Mayo, pro se.

John D. Seiver, Richard A. Gibbs, and Adam Shoemaker, Washington, were on the brief for appellee.

Before THOMPSON and McLEESE, Associate Judges, and STEADMAN, Senior Judge.

THOMPSON, Associate Judge:

Appellant W. Dianne Mayo appeals from the trial court's October 18, 2011, order that granted appellees' motion for default judgment, permanently enjoined appellant and the Female Union Band Society (Reinstated) ("the Reinstated Society") from interfering with the management and maintenance of the Female Union Band Society Cemetery (the "Cemetery"), and declared that appellant and the Reinstated Society have no legal or equitable interest in the Cemetery. We affirm the trial court's ruling.

I.

Historically, the Cemetery, located at 27th and Q Streets, N.W., was owned by the Female Union Band Society (the "Society"), a cooperative benevolent society formed in 1842 by a group of free black women. *See Female Union Band Ass'n v. Unknown Heirs at Law,* 403 F.Supp. 540, 541 (D.D.C.1975). In a series of rulings over thirty years ago, the United States District Court for the District of Columbia (1) in Civil Action No. 1705–65, quieted

---

[*] The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment on January 16, 2013. It is now being published upon the court's grant of appellee's motion to publish.

title to the Cemetery by declaring that fee simple title vested in 23 named individuals "as tenants in common ... in undivided interests"; and (2) in Civil Action No. 2591–63, appointed trustees (including appellee Vincent deForest[1]) to manage and maintain the Cemetery. Many years later, appellant Mayo putatively "reinstated" the Society and then, in 2010, purporting to exercise rights as an owner of the Cemetery, replaced signage at the Cemetery with her own signage and threatened to charge visitors to the Cemetery for parking on an adjacent road.

On September 1, 2010, appellees (to whom we refer collectively as the "Cemetery Trust" or "the Trust") filed a complaint against appellant and the Reinstated Society in the Superior Court, seeking declaratory and injunctive relief. After hearings in October 2010, the court granted a temporary restraining order and then a preliminary injunction barring the defendants from interfering with the Trust's management of the Cemetery. On February 14, 2011—after defendants had failed to file a timely answer, after successive untimely answers were rejected by the Clerk or were stricken as noncompliant with Superior Court rules, and after defendants again failed to file a responsive pleading by a new deadline established by the court—the court entered a default judgment against defendants and scheduled an "Ex Parte Proof Hearing" on the Trust's requested relief. After that hearing, which was held on October 14, 2011, the court issued the October 18, 2011, final order that is the subject of this appeal.

By its specific terms, the final order declared that (1) legal title to the Cemetery is held by the Trust; (2) equitable title to the Cemetery is held by "the par-ties, their heirs or devisees [as] listed in accordance with an order of the U.S. District Court for [the] District of Columbia dated April 20, 1967, in C.A. 1705–65"; (3) appellant and the Reinstated Society "have no equitable or legal interest" in the Cemetery; (4) appellant and the Reinstated Society have no authority to direct the day-to-day management of the Trust or to interfere with or obstruct the Trustees; and (5) appellant and the Reinstated Society are permanently enjoined from interfering with the Trustee's management of the Cemetery, from trespassing on or damaging or modifying the Cemetery or its tombstones and gravesites, and from blocking access to parking alongside the Cemetery.

## II.

Appellant's pro se brief asks this court to "determine her equitable title and interest" in the Cemetery "as a direct lineal descendant of ... her great-great grandparents," some of whose other direct lineal descendants are listed as tenants in common in the District Court's April 20, 1967, order in C.A. 1705–65 (to which we refer hereafter as "the 1967 list"). We construe appellant's request as a claim that the trial court erred in not recognizing appellant's asserted interest—a claim that we reject, for several reasons.

First, the record supports the trial court's finding that appellant presented no evidence that the interest held by individuals on the 1967 list passed to her by way of a will or by intestacy (i.e., in the trial court's words, no "proof that their interest is actually something that legally came down through them to [appellant]"). The court advised appellant repeatedly that she

---

1. Appellant seems to question whether Mr. deForest was appointed as a trustee, but she offers no basis for us to doubt his appoint-ment as reflected in the District Court's order of March 30, 1976.

should bring to the proceedings all documentation related to her claim of ownership of an interest in the Cemetery. As the court found in its October 18, 2011, order, however, "[a]t best, [appellant's evidence] established [a] distant familial relationship with certain tenants-in-common of the [Cemetery]." Appellant questions the trial court's refusal to accept as proof a document "containing a list of names of [appellant's] family members . . . as evidence of her heritage[.]" The issue, however, was not appellant's heritage, but whether she obtained an equitable interest in the Cemetery through bequest(s) or intestacy. Appellant testified that several individuals on the 1967 list are her "third cousins," but that is a degree of relationship that does not tend to show that she is a natural object of their bounty or an heir to their interests.[2]

Appellant's position appears to be that even if she did not acquire an interest in the Cemetery as the devisee or heir of individuals on the 1967 list, she inherited an interest in the Cemetery through ancestors who were omitted from, but should have been included on, the 1967 list.[3] This claim likewise provides no basis for us to disturb the trial court's ruling. Even if the District Court's ruling that determined the tenants in common of the Cemetery as of 1967 could be disturbed after these many years,[4] any effort to re-open that issue must be directed in the first instance to the District Court, the court that issued the judgment. Appellant presented no evidence that the District Court has modified its order. Moreover, as appellees have argued, even if appellant could establish that she acquired an interest in the Cemetery through her ancestors or through other individuals on the 1967 list, her undivided, fractional interest would not give her the unilateral right to direct or interfere with the Trust's management of the Cemetery. She would, as the trial court put it, "need to work within the confines of the trust" (meaning, as the trial court explained, that she would need to "talk to Mr. deForest").[5]

Nor do we discern any error in the trial court's reasoning that appellant's purported "reinstatement of the Society can't change the [1976] court order" that mandated that named trustees maintain and oversee the Cemetery.[6] Appellant relies on Article 13 of a document that she iden-

---

**2.** *See* D.C.Code § 19–311 (2001) (providing that collateral relations share in equal degree only "[a]fter children, descendants, parents, brothers, and sisters of the deceased and their descendants").

**3.** Appellant asks, for example, "what resources were utilized to support the list used as evidence in [the District] court?" She also asks this court to "add her direct lineal ancestors to the list of heirs[.]"

**4.** Appellees' counsel represented to the trial court, without contradiction, that he was aware of "no requests for reconsideration of any of these [District Court] orders" after 1976.

**5.** Or, as appellees suggested in a letter to appellant, appellant would need to "petition the court [as an established heir or devisee] to make changes to the trust."

**6.** The trial court did not, as appellant asserts, "determine that the Appellant . . . had no legal right to reinstate the society." Rather, the court reasoned that "reinstatement" of the Society did not affect the ownership of the Cemetery as determined by the District Court.

Appellant also referred to other indicia of her purported ownership of the Cemetery, such as water bills from the District of Columbia Water and Sewer Authority. We agree with the trial court that these documents did not evidence any ownership interest in the Cemetery since they were "created because [appellant] said that [she] own[s] the property[.]" We note that appellees told the trial court that they would "take care of the [water] bill" for the Cemetery.

tifies as the "Female Union Band Association Constitution Historic Document," which states that "this society shall not be dissolved as long as there are five members willing to continue the same."[7] Even if this document is what appellant claims it is, on its face it does not authorize appellant—who does not claim that she was an historic member "willing to continue the same" or that four other members were like-minded—to reinstate the Society, much less to reinstate it as a way of achieving ownership of the Cemetery. We agree with the trial court that appellant presented no documentation showing that "her trust is the trust that should be respected in this jurisdiction."[8]

For the foregoing reasons, the judgment of the trial court is

*Affirmed.*

7. Appellant asserts that she first obtained a copy of this constitution in 2002.

8. Moreover, even if there were merit to the Reinstated Society's claim of ownership of the Cemetery, we have no occasion to review that claim because appellant appealed only in her own name (see Notice of Appeal); she did not note an appeal in the name of the Reinstated Society. *See Patterson v. District of Columbia,* 995 A.2d 167, 170 (D.C.2010) ("A notice of appeal must specify the party or parties taking the appeal by naming each one in the caption or body of the notice." (internal quotation marks omitted)); *Walker v. District of Columbia,* 656 A.2d 722, 723 (D.C.1995) ("[W]e cannot consider any claims of error affecting only the attorney because the attorney did not note an appeal in her own name.").

We do not doubt the genuineness of appellant's concern about "the management of [the] graves" of her ancestors who are buried in the Cemetery. In this regard, we note that the trial court's order should not necessarily be read as foreclosing appellant from showing in some future proceeding, if she can, that she has a (fractional, undivided) interest in the Cemetery as an heir or devisee of one or more of the individuals on the 1967 list and, on that basis, attempting to hold the Trust accountable for proper management of the Cemetery. Although the default judgment states that appellant has "no ... equitable interest" in the Cemetery, this declaration, part of the specific relief requested by appellees, could arguably be read as denoting the court's agreement with appellees' position that appellant is not "the *sole* heir ... entitled to have inherited from everyone on [the 1967] list" (italics added).